No. 22-16623

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CRISTINA BALAN,

*Plaintiff-Appellant,*

v.

ELON MUSK & TESLA, INC.

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:21-cv-09325-HSG
Hon. Haywood S. Gilliam Jr.

_____

**APPELLANT'S OPENING BRIEF**

_____

William Moran II
Arthur P. Hawgood III
Arthur William, LLP
10015 Old Columbia Rd. Ste. B215
(626)720-7784
Bill@awlegalfirm.com
Arthur@awlegalfirm.com


*Attorneys for Appellant*
Cristina Balan

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION .............................................................................1

JURISDICTIONAL STATEMENT ......................................................5

ISSUE(S) PRESENTED....................................................................6

STATEMENT OF THE CASE............................................................7

STANDARD OF REVIEW .................................................................9

SUMMARY OF THE ARGUMENT .....................................................9

ARGUMENT ................................................................................11

**I. THE U.S. DISTRICT COURT LACKED JURISDICTION................11**

    A. Under this Circuit's existing precedent applying the "remand" approach, the Petition fails to satisfy the amount-in-controversy………………….....13

    B. Post-Badgerow, the "award approach" controls and a Petition to confirm a $0 award does not satisfy the amount-in-controversy……………………..17

    C. Regardless, Appellants did not satisfy their burden on subject matter jurisdiction by failing to make the demand part of the record. …….……...20

**II. THE AWARD SHOULD BE VACATED UNDER FAA SEC. 10……….22**

A.    The arbitrator's application of C.C.P. §340(c) amounted to, and is a collective factor towards, "manifest disregard for the law."……………….25

B.    The arbitrator applying California law, despite Tesla's agreement for the first 865 days of the case to Washington law, amounted to, and is a

collective factor towards, "manifest disregard for the law." ………..……...27

C.    The arbitrator's ruling that raising a limitations defense 882 days into a case was not a waiver, despite clear expectations prejudice, amounts to, and is a collective factor towards, "manifest disregard for the law." ………..……...29

CONCLUSION ........................................................................................................31

STATEMENT OF RELATED CASES ……………………………………..…..33

CERTIFICATE OF COMPLIANCE………………………………………......34

CERTIFICATE OF SERVICE …………………………………………..…..35

**Cases**

*Am. Guar. Co. v. Caldwell*,
  72 F.2d 209 (9th Cir. 1934). ...............................................................14

*ASARCO LLC v. United Steel Workers Int'l Union*,
  910 F.3d 485 (9th Cir. 2018) ....................................................... 27, 29

*Badgerow v. Walters*,
  596 U.S. 1 (2022)............................................................................ passim

*Balan v. Tesla Motors, Inc.*, No. C19-67 MJP,
  2019 WL 2635903 (W.D. Wash. June 27, 2019) ................................... 4, 7, 27

*Baltin v. Alaron Trading Corp.*,
  128 F.3d 1466 (11th Cir. 1997). ................................................. 12, 15

*Bosack v. Soward*,
  586 F.3d 1096 (9th Cir. 2009) .................................................................9

*Bull HN Info. Sys., Inc. v. Hutson*,
  229 F.3d 321 (1st Cir. 2000)...............................................................12

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...........................................21

*Caremark LLC v. USRC Pharmacy*, No. 22-cv-02127-PHX-GMS,
  2023 WL 8109602 (D. Ariz. Nov. 22, 2023) .....................................13

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018).................................................................20

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...................................................... 25, 27

*City of Oakland v. Public Employees' Retirement System*,
  95 Cal.App.4th 29 (Cal. App. 2002)..................................................26

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ....................................................... 23, 24

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir.2001).................................................................29

*Dendinger v. Maryland Casualty Co.*,
  302 F.2d 850 (5th Cir. 1962)...............................................................22

*Dunbar v. Airbnb, Inc.*, No. 21-cv-00451-JMS (WRP),
  2022 WL 17067455 (D. Haw. Nov. 17, 2022)............................... 13, 19

*Finley v. United States*,
  490 U.S. 545 (1989)..............................................................................22

*First Options, Inc. v. Kaplan*,
  514 U.S. 938 (1995)................................................................................9

*Ford v. Hamilton Investments, Inc.*,
  29 F.3d 255 (6th Cir. 1994) .................................................................13

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
 552 U.S. 576 (2008).................................................................. 6, 9, 23, 24
*Horton v. Liberty Mut. Ins. Co.*,
 367 U.S. 348 (1961)............................................................................13
*Karsner v. Lothian*,
 532 F.3d 876 (D.C. Cir. 2008)............................................................12
*Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*,
 341 F.3d 987 (9th Cir. 2003) ................................................... 23, 24, 26
*Luong v. Circuit City Stores, Inc. ("Luong* I")*,
 356 F.3d 1188 (9th Cir. 2003) ............................................................15
*Luong v. Circuit City Stores, Inc. ("Luong II")*,
 368 F.3d 1109 (9th Cir. 2004) ...................................................... 11, 16
*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
 173 Cal.App.4th 1040 (Cal. App. 2009)............................................3, 26
*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
 514 U.S. 52 (1995)..............................................................................27
*Matheson v. Progressive Specialty Ins. Co.*,
 319 F.3d 1089 (9th Cir. 2003) ............................................................21
*Mcunu v. Trader Vic's*, No. 19-cv-07817-EMC,
 2020 WL 12894939 (N.D. Cal. May 20, 2020)....................................25
*Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
 44 F.3d 826 (9th Cir. 1995) ...................................................... 2, 25, 27
*MSR Exploration, Ltd. v. Meridian Oil Co.*,
 74 F.3d 910 (9th Cir.1996) ...................................................................9
*New Frontier Inv. AG v. BitCenter, Inc.*, No. 23-MC-80154-PHK,
 2024 WL 459070 (N.D. Cal. Feb. 6, 2024)......................................... 12, 13, 20
*Peebles v. Merrill Lynch*,
 431 F.3d 1320 (11th Cir. 2005), .........................................................12
*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
 627 F. Supp. 2d 1096 (N.D. Cal. 2008).............................................29
*Savage v. Glendale Union High Sch.*,
 343 F.3d 1036 (9th Cir. 2003) ............................................................20
*Scott v. Breeland*,
 792 F.2d 925, 927 (9th Cir. 1986) .....................................................20
*Sky-Med, Inc. v. Fed. Aviation Admin.*,
 965 F.3d 960 (9th Cir. 2020) .............................................................11
*Southland Corp. v. Keating*,
 465 U.S. 1 (1975)................................................................................19
*Theis Rsch., Inc. v. Brown & Bain*,
 400 F.3d 659 ............................................................................ passim

v

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987).............................................................................25
*United States v. Cotton*,
    535 U.S. 625 (2002).................................................................. 11, 20
*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)...........................................................................18
*Wagner Construction Co. v. Pacific Mechanical Corp.*,
    41 Cal.4th 19 (Cal. 2007); ..............................................................25
*Wolsey, Ltd. v. Foodmaker, Inc.*,
    144 F.3d 1205 (9th Cir. 1998) ..........................................................9
*Zalkind v. Ceradyne, Inc.*,
    194 Cal.App.4th 1010 (Cal. App. 2011)...........................................25

**Statutes**

9 U.S. Code §9 ....................................................................................17
9 U.S.C. §§9-10.......................................................................... passim
9 U.S. Code §10 ......................................................................... passim
28 U.S.C. § 1291 ..................................................................................5
28 U.S.C. § 1331 ...............................................................................5, 6
28 U.S.C. § 1332 ....................................................................... passim
28 U.S.C. §1367.......................................................................... 17, 22
C.C.P. §22.........................................................................................26
C.C.P. § 340(c)........................................................................... passim
RCW 7.04.090(3) ...............................................................................27

# INTRODUCTION

Appellant Cristina Balan ("Balan") is a respected automotive design engineer who worked and resided, at all relevant times, in Mukilteo, WA. ER-76–77. Balan is most recognized for her work on Appellee Tesla, Inc's (hereinafter "Tesla") vehicles as memorialized by the company engraving her name on its vehicle battery modules, which were the focus of her work from 2010 to 2014. *Id.*[1]

In 2019 Balan brought defamation claims against Tesla and, in 2021 against Elon Musk, each of which were improperly dismissed in arbitration as time-barred under C.C.P. § 340(c)'s one-year limitations period and that dismissal wrongly confirmed by the district court which lacked subject matter jurisdiction.[2] ER-4–5.

The averred jurisdictional basis for Appellees' application to confirm the award was 28 U.S.C. § 1332, which requires complete diversity and more than $75,000 in dispute. ER-77. The district court failed to make jurisdictional findings. ER-4–5. Appellees did not even include the arbitration demand subject to the arbitrator's award. E.R. 74-124. No basis exists to find the amount in dispute would be satisfied under *Badgerow v. Walters*, 596 U.S. 1 (2022), which prohibits looking past the face of a petition under 9 U.S.C. §9 to establish jurisdictional

---

[1] Linette Lopez, *A former Tesla engineer says the company silenced her entire team after they brought up safety and quality issues (TSLA)*, BUSINESS INSIDER (Aug 15, 2018) accessed Mar 25, 2024 at: https://finance.yahoo.com/news/former-tesla-engineer-says-company-175946111.html?guccounter=1 - Appellant seeks judicial notice of articles in the footnotes. *See, e.g.*, *Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012) aff'd, 736 F.3d 528, 534 (D.C. Cir. 2013) (taking judicial notice of "various internet postings" for context of the dispute).

[2] This is not an appeal of 4:22-cv-03890-HSG (terminated as moot/non-preclusive)

facts. Further, no basis exists under this circuit's pre-*Badgerow* precedent because:

(1) Appellees' petition did not seek to reopen arbitration and there is no arbitration demand to look-through to as the parties agree that the demand was neither part of the record nor considered by the district court. *See* ECF 21, 26, 29; *See Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664–665 (9th Cir. 2005) (Ninth Circuit applies a mixed approach that only looks past the face of the petition to find amount-in-controversy when the petition seeks to reopen arbitration).

(2) If look-through were allowed, Appellees failed to sufficiently plead amount-in-controversy by offering threadbare recitals and by failing to make the demand part of the record; provided that the pleading standard on petitions to confirm would mirror a removal action (each rely on an opposing party's claims). [3]

Further, not only did the district court lack jurisdiction but, here, the arbitrator also exceeded his authority by "act[ing] outside of the scope of the parties' contractual agreement" when he decided the case on an inapplicable limitations statute. *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995). The arbitration agreement states that resolution of the dispute shall be based solely upon the governing law "and the arbitrator may not invoke

---

[3] Additionally, *arguendo*, if a hypothetical demand were considered, it may still be insufficient if it were silent on amount. This panel never ruled on Balan's judicial notice motion, ECF 11, pertaining to the demand (and earlier complaint) and thus this argument is made *arguendo* to avoid waiver if that motion were granted. However, Balan concurs with Appellees ECF 21 filing that the demand (and complaint) is not part of the record and is not noticeable because the district court did not consider it. Balan noted concurrence in ECF 26, 29, without objection.

any basis (including but not limited to notions of 'just cause') other than such controlling law." ER-123.[4] Here, the arbitrator found that California law governed the dispute, and dismissed the claims under "C.C.P. section 340(c)." ER-116, 119. However, the arbitration agreement was violated because C.C.P. §340(c) does not, under California law, apply to arbitrations. This sub-section applies to "action[s]" which C.C.P. §22 defines as court proceedings. *Cf. Manhattan Loft, LLC v. Mercury Liquors, Inc.,* 173 Cal.App.4th 1040, 1051 (Cal. App. 2009) (a *lis pendens* cannot be based on an arbitration, which is not an "action.") Thus, the arbitrator exceeded his powers under the agreement when he decided the matter based on a defense that is inapplicable in arbitration under California law.[5]

Further, the arbitrator acted with undue bias in favor of Appellees, and to the prejudice of Appellant, both by finding that California law applied despite Tesla's earlier agreement to Washington law and by allowing a statute of limitations defense that was not raised within a reasonable time (882 days into the case). ER 116, 118. On June 27, 2019, the U.S. District Court for the Western District of Washington, in its ruling granting in part and denying in part Tesla's motion to

---

[4] In Ex. E of the petition to confirm the arbitration award, Appellees include a signed Aug. 16, 2010 arbitration agreement, ER-123–124, along with a separate unsigned document titled "Arbitration Agreement" that is dated June 7, 2013. ER-122. Balan is not a time traveler. Undersigned assumes that the June 7, 2013 document (ER-122) is inoperable and extraneous because it is unsigned and that the Aug. 16, 2010 signed arbitration agreement (ER-123–124) controls.

[5] Undersigned is unable to locate any iterations of an arbitration award of dismissal pursuant to C.C.P. § 340(c) ever being confirmed. There is no case law expressly stating that this statute of limitations section does or does not apply in arbitration.

compel arbitration of Balan's claims, found that Washington law applied and that the parties so agreed. *Balan v. Tesla Motors, Inc.*, No. C19-67 MJP, 2019 WL 2635903 (W.D. Wash. June 27, 2019).[6] Similarly, in the first arbitration conference months later, Tesla again agreed that Washington law applied to the action. ER-118. For the first 865 days of the case, Tesla never challenged the assertion that Washington law was the controlling law in the case. ER-57–58. Balan's claims, each noticed 1-2 years after the underlying defamatory acts, would not be time-barred under Washington's two-year statute of limitations for defamation. ER-116.

Further, in its July 2019 answer to Balan's claims, Tesla filed 17 affirmative defenses but would not supplement this to assert a statute of limitations defense until June 15, 2021, or 882 days into the case. ER-76. The arbitrator minimizes the delay in asserting this defense, noting an interlocutory appeal (of the June 27, 2019 partial denial of the motion to compel arbitration). ER-115. However, the timeline from Balan's initial filing is this: (a) five months at the district court; (b) nine months of arbitration before an appellate stay; (c) 15 months of appeal; (d) several months thereafter; and (e) Tesla finally raised the defense. ER-57–58. This defense was not contingent on a motion to compel arbitration and could have been raised at the district court as to all claims on day one rather than first being asserted on day nearly 1,000. Putting a party through years of extraneous motions, appeals, and arbitration before ever asserting such a defense is unreasonable and a waiver.

---

[6] The district court granted Appellees' judicial notice request of this record in n.1 of the 9/26/2022 Order Granting Petition to Confirm Arbitration Award. *See* ER-5.

4

In this case, from the perspective of Balan, Tesla agreed that they were sitting at a poker table, but 1,000 days in, the dealer said Balan "busted" because her cards were more than Blackjack 21 – the rules changed from Washington to California law. ER-114–119. Worse, even though Balan's had a pair of aces: (1) Tesla's agreements to Washington law; and (2) Tesla's waiver by failing to timely raise a limitations defense – those Aces were valued at 11, not one. See ER-57–58, 114-119. Finally, when her claims should have survived anyways because C.C.P. §340(c) does not apply in arbitration, the dealer said she lost the game of cribbage. *Id.* Meanwhile, Tesla and the world's richest man waived choice-of-law, asserted a defense that contradicted the arbitration agreement, and sat on rights for 882 days, all of which was ignored to the detriment of a *pro per* whose matter was dismissed. *Id.* Then, the district court confirmed this erroneous dismissal without regard to whether it had subject matter jurisdiction, which it did not. ER-4–5.

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction because there is no federal question at issue, 28 U.S.C. § 1331, and the amount-in-controversy cannot be satisfied for purposes of diversity jurisdiction, 28 U.S.C. § 1332, in the wake of *Badgerow v. Walters*, 596 U.S. 1 (2022) (prohibiting looking past the petition to find jurisdictional facts) and this circuit's pre-*Badgerow* precedent in *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664–665 (9th Cir. 2005) (look through approach only used when petitioner seeks to reopen arbitration). Notwithstanding, this court has jurisdiction under 28 U.S.C. § 1291 to hear appeal of the final judgment of the district court entered on September 26, 2022, that disposed of all claims.

## ISSUE(S) PRESENTED

I.  Did the federal district court lack subject matter jurisdiction, under 28 U.S.C. § 1331 or 28 U.S.C. § 1332 to confirm the arbitral award under the Federal Arbitration Act (FAA), Section 9 where no federal question exists and:

    A. Under this Circuit's pre-*Badgerow* precedent, the demand is not considered because Appellees did not seek to reopen the arbitration, and the amount-in-controversy is not satisfied on the face of the petition; OR

    B. The decision in *Badgerow v. Walters*, 596 U.S. 1 (2022) prohibits "looking-through" to the arbitration demand and the amount-in-controversy is not satisfied on the face of the petition; OR

    C. (If look-through allowed) The pleading standard for a petition to confirm would mirror removal actions, both relying on the counterparty's claims, and Appellees only pled insufficient threadbare recitals on amount-in-dispute?

II. Does the dismissal award under C.C.P. §340(c) amount to "a manifest disregard for the law," or otherwise allow for vacatur under 9 U.S.C. §10(a), considering the following individually, but also collectively under *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585 (2008):

    A. C.C.P. §340(c) does not apply in arbitration[7] by its plain language;

    B. Tesla agreed for the first 865 days of the case that Washington law applied;

    C. Tesla was deemed not to have waived the limitations defense despite first raising it 882 days into the case resulting in blatant expectations prejudice;

---

[7] Appellees falsely told the arbitrator C.C.P. §340(c) applies in arbitration and no exception exists. The hearing transcript was part of Balan's unruled upon judicial notice motion, ECF 11. Per n.3, Balan now concurs that this and other records, cannot be noticed. *Arguendo*, if this panel finds otherwise, Balan reserves the argument that these statements constitute undue means, 9 U.S.C. §10(a)(1).

# STATEMENT OF THE CASE

On Jan. 15, 2019, Balan filed a complaint for defamation against Tesla Motors in the United States District Court for the Western District of Washington, related to certain false, disparaging remarks made by the company on September 11, 2017. ER-57–58.[8] Tesla sought to compel arbitration which was granted in part and denied in part. ER-58 In that ruling, the district court found Washington law applied: "The Parties appear to agree that Washington law applies in this case, both relying exclusively on Federal and Washington law in their briefs." *Balan v. Tesla Motors, Inc.*, No. C19-67 MJP, 2019 WL 2635903 (W.D. Wash. June 27, 2019).

Similarly, the first arbitration conference order read, "[i]nitially, the parties agree that the substantive law of Washington shall apply in this proceeding…". ER-118. In that conference, when asked about applicable law, Tesla's counsel replied, "Washington law, and frankly it [sic] matters [sic] for this case, because defamation law doesn't differ that much but is Washington state law." ER-33.[9] This was intuitive because Balan lived, worked, and filed her claims in Washington, Tesla knew she lived in Washington (from a separate arbitration, *See* n.1), and the defamation pertained to her Washington business. ER-76–77.

Appellees position that Washington law applied remained unchanged 865 days into the case until May-June 2021 when they first asserted that California law

---

[8] Balan filed a superseding amended demand on May 24, 2021. ER-58
[9] Balan's self-composed transcript.

applied.[10] ER-26. On August 29, 2021, despite Tesla's prior agreements to Washington law, the Arbitrator entered an order applying California law. ER-10.

Appellees then filed a motion to dismiss pursuant to C.C.P. § 340(c)'s one-year statute of limitations. ER-116. Tesla never earlier raised this defense, including in their July 2019 answer, despite listing no fewer than 16 affirmative defenses. ER-114–16. For clarity, this defense was first asserted 882 days into the case after putting Balan through five-months of district court proceedings, nine-months of initial arbitration, 15-months of an unrelated Ninth Circuit appeal, and another month or two of arbitration. ER-57–58.

The arbitrator granted the motion ruling that "[e]ach of [Balan]'s claims are barred by the applicable statute of limitations" because "[t]he statute of limitations in California for defamation claims is one year. C.C.P. 340(c)." ER-116, 119. However, as explained *supra*, C.C.P. § 340(c) does not apply in arbitration, and the arbitration agreement barred any discretion an arbitrator may or may not have otherwise had to apply the inapplicable statute: "[t]he arbitrator may not invoke any basis (including… 'just cause')… other than such controlling law." E.R. 123. Regardless, the ruling makes clear that the balance of any "just cause" factors weighed in favor of preserving Balan's claims by noting that Tesla's years of

---

[10] On June 2, 2021, Tesla submitted a purported joint-stipulation to apply California law that Balan immediately objected to on grounds of fraudulent inducement as evidenced by unconscionability: a claimant would not knowingly agree to abridge the statute of limitations, the claimed effect of which would be to disqualify her claims, 30-months into a dispute. Regardless, Appellee Musk was not a party to this alleged joint stipulation, which only included Balan and Tesla.

agreement to Washington law provided a "colorable claim" for reliance. ER-118.

The U.S. District Court for the Northern District of California confirmed this award of dismissal without making jurisdictional findings. ER-4–5. The action was heard under 28 U.S.C. § 1332 which requires complete diversity and more than $75,000 in controversy. ER-77. Although complete diversity existed, the petition only made a threadbare claim about the amount in dispute. ER-76–77. Further, the petition did not include, and at no time did either party incorporate into the record, either Balan's original complaint or amended arbitration demand. See ER-74–124.

## STANDARD OF REVIEW

The existence of subject matter jurisdiction is a matter of law that is reviewed *de novo*. *MSR Exploration, Ltd. v. Meridian Oil Co.*, 74 F.3d 910, 912 (9th Cir.1996). The meaning of an agreement to arbitrate is a question of law reviewed *de novo*. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1211 (9th Cir. 1998). Confirmation or vacation of an arbitration award is reviewed *de novo*. *See First Options, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995). However, review of an arbitration award is both limited and deferential. *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Grounds for vacating an award are limited to those in 9 U.S.C. §10. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

## SUMMARY OF THE ARGUMENT

Appellant sets forth two arguments for reversal: (1) The district court lacked subject matter jurisdiction; and (2) the arbitrator exceeded his authority or acted with bias by ruling contrary to the arbitration agreement, by overriding the parties' agreement on choice-of-law to change the rules 1,000 days into the case, and by

dismissing claims under a statute of limitations defense first-raised on day 882.

The district court did not have subject matter jurisdiction, under 28 U.S.C. § 1332 for failure to satisfy the amount-in-controversy because: (1) Under this Circuit's pre-*Badgerow* precedent in *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664–665 (9th Cir. 2005), the court can only look-through to the demand to establish amount-in-controversy if the petitioner (Appellees) seeks to reopen the arbitration, which they did not; (2) The Court in *Badgerow v. Walters*, 596 U.S. 1 (2022), prohibited "looking-through" to the arbitration demand to establish jurisdictional facts under 9 U.S.C. §§9-10, and so the amount in dispute in an action to confirm an award of dismissal is nominal and insufficient; and (3) Appellees' insufficiently pled amount-in-controversy by offering only threadbare recitals; provided the pleading standard for a petition to confirm would mirror removal actions because, in both, the petitioner is not the master of the complaint.

Alternatively, if jurisdiction is found, the arbitrator exceeded his powers and acted with evident partiality in dismissing the claims because: (1) If California law applied, the arbitration agreement did not allow the arbitrator to deviate from that law by applying C.C.P. §340(c), which does not apply in arbitration; (2) 1,000 days into the case, the arbitrator declared California law controlled overriding both a federal court finding and Tesla's express agreement that Washington law applied; and (3) The arbitrator credited the statute of limitation defense over objections despite Tesla waiting an unreasonable time (882 days) to raise it. (waiver).

**ARGUMENT**

As an initial matter, the federal court is not authorized to enter a substantive order in a matter, such as confirming an arbitration award, without subject matter jurisdiction. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Unlike other matters, "subject-matter jurisdiction… can never be forfeited or waived." *Id.*

## I. THE U.S. DISTRICT COURT LACKED JURISDICTION

A petitioner seeking to confirm an award must have a jurisdictional basis separate from the FAA's "authorization of a petition [which] does not itself create jurisdiction" *Badgerow*, 142 S. Ct. at 1314; *see also Luong v. Circuit City Stores (Luong II), Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004) ("§ 10 [does not] create federal question jurisdiction even when the underlying arbitration involves a federal question"). This is because an arbitration "award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims." *Badgerow*, 596 U.S. at 9 (citation omitted). Contract claims to enforce legal resolutions are species of state law. *Id*. (citation omitted). Jurisdictional facts necessary for subject matter jurisdiction that must appear on the face of the well-pleaded complaint, to include a petition to confirm arbitration, are either an averment under federal law (other than 9 U.S.C. § 9) or both complete diversity of citizenship between parties and an amount in dispute over $75,000. *See Badgerow*, 142 S. Ct. at 1316 (federal law); *Sky-Med, Inc. v. Fed. Aviation Admin.*, 965 F.3d 960, 965 (9th Cir. 2020) (amount in dispute "generally calculate[d]… by examining the face of the well-pleaded complaint.").

Despite the requirement that jurisdictional facts appear on the face of the

petition, some courts examining petitions to confirm or vacate arbitral awards under 9 U.S.C. §§ 9-10 have applied the so-called "demand approach" to satisfy the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. §1332. *See e.g. Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328-30 (1ˢᵗ Cir. 2000); *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008). Under the demand approach, the amount in dispute in a petition to confirm or vacate an arbitral award is the amount sought in the underlying arbitration, not the amount awarded. *Id.*

Still other courts have applied the so-called "remand" or "mixed" approach under which the amount sought in the underlying arbitration is only considered if the petition requests remand to reopen arbitration. *See e.g., Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472-73 (11ᵗʰ Cir. 1997). For example, the Eleventh Circuit in *Baltin* found no jurisdiction despite the underlying demand exceeding the jurisdictional threshold when both the face of the award was below the threshold and the petitioner did not seek to reopen arbitration. *Id.* However, in *Peebles v. Merrill Lynch*, 431 F.3d 1320, 1325-26 (11th Cir. 2005), the same circuit found jurisdiction over a $0 award where the petitioner sought to reopen arbitration to seek $2,000,000 in damages. As explained in *New Frontier Inv. AG v. BitCenter, Inc.*, No. 23-MC-80154-PHK, 2024 WL 459070, at *3-4 (N.D. Cal. Feb. 6, 2024), under this approach "district courts consider the amount being claimed in the arbitration… [only] if the petitioning party sought to reopen the arbitration."

Finally, some courts have applied the "award" approach both pre- and post-*Badgerow* under which there is no diversity jurisdiction unless the "court can[] tell

based on the face of the Petition… whether the amount-in-controversy exceeds $75,000." *Dunbar v. Airbnb, Inc.*, No. 21-cv-00451-JMS (WRP), 2022 WL 17067455, at *2 (D. Haw. Nov. 17, 2022) ("The court would have to – in violation of *Badgerow* – "look-through" the current Petition to the underlying controversy… to satisfy the requirements of federal jurisdiction under 28 U.S.C. §1332."); *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255, 260 (6th Cir. 1994) ("'The general federal rule has long been to decide what the amount in controversy is from the complaint itself....' *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).").[11]

## A. Under this Circuit's existing precedent applying the "remand" approach, the Petition fails to satisfy the amount-in-controversy.

There is irreconcilable confusion amongst district courts in the Ninth Circuit about what the applicable approach is to determining the amount-in-controversy for a 9 U.S.C. § 9-10 petition both pre- and post-*Badgerow* with courts applying all three approaches. *New Frontier Inv. AG,* 2024 WL 459070, at *3-4 (remand approach but noting demand approach likely the law post-*Badgerow*); *Dunbar*, 2022 WL 17067455, at *2 (award approach); *Caremark LLC v. USRC Pharmacy*, No. 22-cv-02127-PHX-GMS, 2023 WL 8109602, at *2 (D. Ariz. Nov. 22, 2023) (slip. op.) (demand approach). The court in *New Frontier Inv. AG* nailed this circuit's existing precedent explaining that the ruling in *Theis Rsch., Inc.*, 400 F.3d at 664-65, and decisions from other circuits relied on therein, turned on whether

---

[11] The *Ford* court made the decision based on the face of the petition solely, but also did make note in *dicta*, consistent with the remand approach, that the petitioner there did not seek to reopen the arbitration.

the petitioning party "sought to reopen the arbitration" and that only under that circumstance was the demand considered in lieu of the face of the petition. *Id.*

The confusion spawned from a sentence deleted and corrected by the court in *Theis Rsch., Inc.* ("*Theis*"), to emphasize the decision turned on the case specific facts. 400 F.3d at 661. The deleted sentence in that case read as follows:

> Our **conclusion** that we measure the amount in controversy by the amount at stake in the underlying **litigation** is consistent not only with *American Guaranty* from this circuit, but with decisions from other circuits as well.

That sentence was replaced with the following:

> Our **decision** to measure the amount in controversy **in this case** by the amount at stake in the underlying **litigation** is consistent not only with *American Guaranty* from this circuit, but with decisions from other circuits as well.

*Id.* Not only does that correction highlight that the amount in the underlying arbitration is not always considered when reviewing a 9 U.S.C. §§ 9-10 petition, the court went to great lengths to explain this in its analysis of its earlier decision in *Am. Guar. Co. v. Caldwell*, 72 F.2d 209 (9th Cir. 1934). *Id.* at 664.

The *Caldwell* decision quote that proponents of the demand approach latch onto is, "[i]t is the amount in controversy which determines jurisdiction, not the amount of the award." *Id.* However, in *Caldwell*, "the district court initially acquired jurisdiction by the filing of a motion to confirm the arbitration award of $32,500 (above the amount-in-controversy threshold at the time). *Id.* Further, the *Theis* decision made a point to add into a parenthetical about the *Caldwell* decision the following: "no apparent request for remand to arbitration." *Id.* at 665. Also, in the decision's string-cite survey of the rules in other circuits, the panel made note

that the cases turned on whether the petition "sought to reopen the arbitration." *Id.* at 664.[12] The decision then explains that although the petitioner in *Theis* did not formally seek to have the arbitration reopened, the petitioner did the functional equivalent: "Theis simply chose to 'reopen' its claims in the district court rather than in arbitration. *Id.* at 665.[13] This is why the Court explained that its decision was "consistent not only with *American Guaranty* from this circuit, but [also] with decisions from other circuits as well" before citing in the next sentence to *Baltin*, 128 F.3d at 1468, 1472, n.16 where jurisdiction was denied despite the arbitration demand of $69,921.36 exceeding the then amount-in-controversy threshold.[14]

In turn, if *Theis* stood for the proposition that the demand approach applies, or previously applied, in the Ninth Circuit then that would not be "consistent" with *Baltin* or the "decisions from other circuits" cited within that opinion. Further, (mis-)reading *Theis* as an embrace of the demand approach would be a stark departure from the rule announced by this circuit just one-year earlier when the court for a short-time adopted a *Badgerow*-like award approach. *Id.* at 662-63 discussing *Luong v. Circuit City Stores, Inc.*, 356 F.3d 1188, 1190, 1193 (9th Cir. 2003) ("*Luong* I") (amount-in-controversy for a petition to confirm "is the amount

---

[12] The full quote is "the cases have turned upon whether the party seeking to vacate an arbitration award also sought to reopen." This is abridged here for context because *Theis*, and the cases it enumerated, were all appeals of petitions to vacate.

[13] This is also why the corrected section refers to "underlying litigation" rather than "underlying arbitration." *Id.* at 661.

[14] In *Baltin*, the underlying matter was filed on March 29, 1996, before the amount-in-controversy threshold was changed to $75,000 on January 17, 1997. *Id.* at n. 17.

awarded" because the matter "becomes subject to judicial review in federal court only" after the petition is filed), opinion withdrawn, 368 F.3d 1113 (9th Cir.), substitute opinion, 368 F.3d 1109 (9th Cir. 2004) ("*Luong II*") (finding federal question jurisdiction negating the need to assess amount-in-controversy). Thus, the correct reading of the Ninth Circuit's pre-*Badgerow* precedent is that a "mixed" or functional "remand" approach applied, under which an essential question is whether the petition sought to reopen arbitration.

Here, Appellees sought to confirm a $0 award of dismissal and did not seek to reopen the arbitration. Further, the petition provided only a threadbare recital of the $75,000 amount-in-controversy requirement and Appellees did not even include the demand as an exhibit. Moreover, at no time during the proceeding did the petitioner incorporate by reference the demand or seek judicial notice thereof. In fact, Appellees expressly argued against this panel taking judicial notice of the arbitration demand because the demand was neither before nor ever considered by the district court in the action subject to this appeal. ECF 21, *see also* ECF 26, 29. To that effect, the district court neglected to make findings as to amount-in-controversy or the basis for jurisdiction. ER-4–5. That boat won't float.

Under existing Ninth Circuit precedent in *Theis*, what we have is a $0 award, no ability to look-through to the demand because Appellees, as petitioners, were not seeking to either remand to reopen arbitration or to receive some dollar amount exceeding $75,000, and as they argued, there is not even a demand in the record. Further, to the extent that Appellees try to latch onto the language in *Theis* addressed *supra* n. 11 about cases turning on whether a party seeking to vacate also

16

seek to reopen, that would require basing jurisdiction in this action on a separate, non-merged, non-incorporated action to vacate – there is no such novel doctrine of multi-action supplemental diversity jurisdiction via a counterclaim.[15] Thus, even prior to *Badgerow*, Appellees petition belonged in state court.

## B. Post-Badgerow, the "award approach" controls and a Petition to confirm a $0 award does not satisfy the amount-in-controversy.

The district court also lacked subject matter jurisdiction to confirm the arbitrator's award, based on *Badgerow v. Walters*, 596 U.S. 1 (2022) which prohibits, with respect to petitions to confirm arbitration under 9 U.S. Code §9, applying a "look-through" approach to finding jurisdictional facts. *Id.* at 1321 Instead, the facts establishing a jurisdictional basis must be present on the face of the application or petition to confirm an arbitral award. *Id.*

In *Badgerow*, the Supreme Court reasoned, based on the canons of statutory construction, that because Congress included express language authorizing a jurisdictional look-through approach as to petitions under Sec. 4 of the FAA, but did not include this language for Sec. 9 and 10, this shows the legislature did not intend for this approach to be used for petitions under 9 U.S.C. §§ 9-10. *Id.* at 11. The Court explained, "[w]hen Congress includes particular language in one section

---

[15] Into the weeds, if a vacatur petition were deemed a "compulsory counterclaim," it would then be governed by Fed. R. Civ. P. 13. Supplemental jurisdiction in diversity actions extends to certain claims under Fed. R. Civ. P. 14, 19, 20 and 24, but Fed. R. Civ. P. 13 is not part of that enumeration. 28 U.S.C. §1367(b). Thus, to theoretically garner jurisdiction in a petition to confirm from an opposing party's vacatur petition, there would need to be a federal question, 28 U.S.C. §1367(a).

of a statute but omits it in another section of the same Act, this Court generally takes the choice to be deliberate." *Id.* (internal quotations omitted).

Although diversity jurisdiction and the amount-in-controversy were not the issues before the Supreme Court, the *Badgerow* decision makes clear that the ruling is intended to impact diversity jurisdiction, *Id.* at 9:

> The issue here is about where a federal court should look to determine whether an action brought under Section 9 or 10 has an independent jurisdictional basis. An obvious place is the face of the application itself. If it shows that the contending parties are citizens of different States (with over $75,000 in dispute), then §1332(a) gives the court diversity jurisdiction.

In fact, the Court unmistakably rubbished the policy argument that the award approach "confronts courts with 'hard questions' about how to determine diversity jurisdiction (including its amount-in-controversy component)," *Id.* at 15-16:

> Walters himself quotes back to us the topline answer to those theories, reflecting its obviousness: "Even the most formidable policy arguments cannot overcome a clear statutory directive." [Respondent's Brief] at 44 (quoting *BP p.l.c. v. Mayor and City Council of Baltimore*, 141 S.Ct. 1532, 1542 (2021).

Similarly, the majority found unpersuasive "[t]he dissent's vaunted 'practical advantages' [which] also mostly concern avoiding those diversity [jurisdiction] issues" because "Congress chose to respect the capacity of state courts to properly enforce arbitral awards... we must respect that evident congressional choice." *Id.* at 16, 18.

In fact, it is long settled that given the FAA's "nonjurisdictional cast, state courts have a prominent role to play as enforcers of arbitration agreements." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (citation omitted). Almost 50-years ago, the Supreme Court explained that "since the overwhelming proportion of all civil

litigation in this country is in the state courts, we cannot believe Congress intended to limit the Arbitration Act to disputes subject only to federal court jurisdiction," *Southland Corp. v. Keating*, 465 U.S. 1, 15, n. 8 (1975) (noting that only 2% of civil cases were in federal court, at the time). Thus, even if applying *Badgerow* to diversity jurisdiction acts would "'close the federal courthouse doors to many,' post-arbitration motions," it would swing open the state courthouse doors to just as many, no party being denied an appropriate forum. *See Badgerow v. Walters*, 596 U.S. 1, 16 (2022). This point was made by the one district court under this circuit that applied *Badgerow* to a diversity action, highlighting not only the role that state courts play under the FAA, but noting that a petitioner has a (state court) forum to file in. *Dunbar*, 2022 WL 17067455, at *6, n. 11 (D. Haw. Nov. 17, 2022).

Here, Appellees went to the district court to confirm a $0 award dismissing Balan's libel claims without appending the arbitration demand to the petition. ER-74–124. The argument against the award approach is less compelling here, and in other diversity actions, than it was in *Badgerow*. In *Badgerow*, federal courts were closed off even where an underlying arbitrated dispute arose from "exclusively federal claims," the type of cases where a federal judge may have special expertise. *Id.* By contrast, applying the award approach here means an arbitrated dispute arising from libel claims, a state court special, would be heard by a state court judge. As compared to the respondent in *Badgerow*, Appellees would have suffered no prejudice by bringing their petition in state court. In fact, the arbitrator (per the arbitration agreement) was a retired state (not federal) judge. ER-123.

Therefore, if this panel is grappling how can a petitioner ever establish

federal diversity jurisdiction when seeking to confirm a $0 dismissal award, the answer from *Badgerow* is simply that they cannot. It being clear that the Supreme Court intended for its *Badgerow* decision to apply to diversity actions, and there being no compelling policy reasons to deviate, this panel should strictly construe 9 U.S.C. §9 in favor of an award approach. *New Frontier Inv. AG*, 2024 WL 459070, at *4 (N.D. Cal. Feb. 6, 2024) ("[T]he Supreme Court's rejection of a 'look through' approach to jurisdiction in Badgerow would appear to impact, if not preclude, the Ninth Circuit's 'mixed approach…'").

C. **Regardless, Appellants did not satisfy their burden on subject matter jurisdiction by failing to make the demand part of the record.**

Subject matter jurisdiction can be challenged at any time, even on appeal. Fed. R. Civ. P. 12(b)(1). *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[Subject matter jurisdiction] defects require correction regardless of whether the error was raised in district court."). When jurisdiction is challenged, "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). An action will be dismissed if the complaint (or petition) "fails on its face to allege facts sufficient to establish subject matter jurisdiction" *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 (9th Cir. 2003).

On the one hand, courts generally "accept [the amount plead] as the amount in controversy if done in good faith," because the "[plaintiff] is the master of her complaint," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). On the other hand, a petition to confirm a $0 award of dismissal (if, *arguendo*,

*Badgerow* and *Theis* do not apply) is akin to removal with amount-in-controversy based on the opposing party's demand. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) ("Conclusory allegations as to the amount in controversy are insufficient" in removal actions).

Here, the Appellees meet no standard as they not only failed to include the arbitration demand (or the preceding complaint), but they affirmatively argued in ECF 21 that these items were not part of the record, not considered by the district court, and not subject to judicial notice to which Balan concurred in ECF 26, 29. Instead, Appellees' petition only offers a threadbare recital of the $75,000 amount-in-controversy requirement, it be intuitive why that is insufficient – even under the demand approach, it stands to reason that a demand needs to be made part of the record for a court to be able to look-through to it. As one court put it, "a plaintiff who makes virtually no attempt to adhere to plausibility pleading standards… fails to meet [their] burden to allege subject matter jurisdiction in good faith." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1062 (C.D. Cal. 2023).

Additionally, and *arguendo*,[16] if a hypothetical pre-arbitration complaint against Defendant A were considered, that complaint should not serve as a good-faith basis for amount-in-controversy, or for supplemental jurisdiction, as to a

---

[16] *See* n. 3. The parties concur that the demand and earlier complaint are not part of the record and do not come in on judicial notice, as neither were considered by the district court. ECF 21, 26, 29. Assuming this panel properly gives effect to that concurrence, Balan consents to striking this and the next paragraph. By contrast, if the panel takes judicial notice of the demand (and complaint), Balan reserves this argument and thus contingently makes the argument here in form of a hypothetical.

legally distinct Defendant B's non-joint acts. *See* 28 U.S.C. §1367(A)-(B). In litigation, there would be no basis for subject matter jurisdiction as to Defendant B's acts, diversity or supplemental, unless the acts independently exceed $75,000 amount-in-controversy. *See e.g., Dendinger v. Maryland Casualty Co.*, 302 F.2d 850, 851 (5th Cir. 1962) (plaintiff cannot aggregate claims for which the two defendants are not jointly liable). Thus, it cannot be that if the same hypothetical complaint was looked-through to, that Defendant B could get in front of a district court via Defendant A's non-joint underlying acts by jointly filing a petition.

Such an absurd result would, in effect, amount to diversity pendent party jurisdiction based on claims not arising out of a common exchange or nucleus of operative fact, inconsistent with 28 U.S.C. §1367(B), and even its superseded precursor *Finley v. United States*, 490 U.S. 545 (1989). Thus, even under a pure demand approach there is no subject matter jurisdiction as to Defendant B unless the amount for claims against him/her separately exceed $75,000 and, in the hypothetical, the later demand bringing claim against him/her is silent on amount.

## II.     THE AWARD SHOULD BE VACATED UNDER FAA SEC. 10

If this panel does not reverse the district court for lack of subject matter jurisdiction, in reviewing the validity of an arbitration award under the FAA, the grounds for vacatur per 9 U.S. Code §10(a), are:

(1) Whether award was procured by corruption, fraud or undue means;

(2) Where there was evident partiality or corruption in the arbitrators;

(3) Other conduct prejudicing the rights of a party;

(4) Where the arbitrator exceeded their powers, or so imperfectly executed them

22

that a mutual, final, and definite award was not made.

In addition to the enumerated vacatur grounds in the FAA, courts have also grappled with a related judicial construct, "manifest disregard for the law." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585, 590 (2008). The court in *Hall St. Assocs., L.L.C.*, held that 9 U.S.C. §10 provided "the FAA's exclusive grounds for expedited vacatur," diffusing the notion that "manifest disregard" provided an additional non-statutory ground for vacatur. However, the Court later arguably contradicted that exclusivity stating, "we do not purport to say that [it] exclude[s] more searching review based on authority outside the statute as well. *Id.* at 590. The Court then left the meaning of "manifest disregard" unresolved in its holding noting it could be understood as a "refer[ence] to the §10 grounds **collectively**," or as a "shorthand for §10(a)(3) or §10(a)(4)." *Id.* at 585 (emphasis added).

In this circuit, the notion of "manifest disregard" was featured in *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (*en banc*) which found that arbitrators do not "exceed their powers" when they "merely interpret or apply the governing law incorrectly." Rather, the *Kyocera* Court explained that vacatur under 9 U.S.C. §10(a)(4) is only appropriate if the award is "completely irrational" or exhibits "manifest disregard for the law." *Id.* Then, the panel in *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) interpreted *Kyocera* as standing for the proposition that "the manifest disregard ground for vacatur is shorthand for… 9 U.S.C. §10(a)(4)." The panel in *Comedy Club, Inc.* grappled with a false dichotomy in trying to reconcile this circuit's *en banc* precedent in *Kyocera* with *Hall St. Assocs., L.L.C.*'s holding

23

that Sec. 10 provided the exclusive grounds for vacatur, that "manifest disregard" in *Kyocera* was: (1) shorthand for Sec. 10(a)(4) and consistent; or (2) a non-statutory avenue for vacatur and inconsistent. *Comedy Club Inc.*, 553 F.3d at 1290.

However, this circuit's *en banc* decision in *Kyocera* was not as narrow as described in *Comedy Club Inc.*, nor did it need to be to comport with *Hall St. Assocs., L.L.C.* Specifically, the decision in *Kyocera* states that vacatur under Sec. 10(a)(4), is appropriate when arbitrators "exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard for the law." *Kyocera Corp.*, 341 F.3d at 1002-03. There is no limiting language in the preceding quote barring, or rendering as inconsistent with *Kyocera*, applying the notion of "manifest disregard" to other 9 U.S.C. §10(a) sub-sections, or to an aggregation of many violations or issues under the same or several sub-sections. There was wisdom in the *Hall St. Assocs., L.L.C.* Court's opaqueness in floating potential interpretations of "manifest disregard" before signing off with "[w]e, when speaking as a court, have merely taken the *Wilko* language as we found it, without embellishment…," which is that the term's significance is solely semantic, as a frame. Substantively, whether labeled "manifest disregard" or otherwise, undersigned is unaware of any case law, or any language within the FAA, requiring that for vacatur under 9 U.S.C. §10(a), defects must be viewed in isolation, be they few or many under either the same sub-section or several. Surely, such an approach, monikered in this brief as "manifest disregard," would comport with the analysis in *Kyocera* that courts can vacate awards under the FAA "that [are] completely irrational." *Kyocera Corp.*, 341 F.3d at 997-98.

### A. The arbitrator's application of C.C.P. §340(c) amounted to, and is a collective factor towards, "manifest disregard for the law."

Arbitrators exceed their powers when they "act outside the scope of the parties' contractual agreement." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995). Parties to an arbitration agreement can specify what issues are subject to an arbitrator's discretion. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30 (1987) ("the agreement here may have limited the arbitrator's remedial discretion"); *Mcunu v. Trader Vic's*, No. 19-cv-07817-EMC, 2020 WL 12894939, at *13 (N.D. Cal. May 20, 2020) (arbitration agreement limited arbitrator's discretion with respect to discovery). Time-bars are an issue that parties can decide to limit or restrict an arbitrator's discretion with respect to. *Wagner Construction Co. v. Pacific Mechanical Corp.*, 41 Cal.4th 19, 23 (Cal. 2007); *see also Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000) (treatment of "a time limit in the arbitration agreement or laches" can be dictated by agreement). As the Court in *Wagner Construction Co.* explained, parties can prevent an arbitrator from setting his own time-bars based on "broad principles of equity and justice" by agreeing that the arbitrator must act in conformity with the law. *Id.*; s*ee also Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1030 (Cal. App. 2011) (time-bars can be expressly set within the arbitration agreement).

Here, the parties expressly agreed that the resolution of the dispute shall be based on the governing law and "[t]he arbitrator may not invoke any basis other

than such controlling law." E.R. 123. If California law controlled, C.C.P. §340(c) does not apply in arbitration by its plain language. CCP §340(c) states that "an **action** for libel [or] slander" must be commenced within "one year" and falls under Cal. Code of Civ. Proc. Part 2, Title 2, Chap. 3 labelled "The time of commencing **actions** other than for the recovery of real property." *Id.* C.C.P. §22 defines "[a]n action" as "an ordinary proceeding **in a court of justice** by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

As explained by state appellate courts, sections of the Cal. Code Civ. Proc. that refer to an "action" or "actions" are understood to expressly exclude arbitral proceedings unless otherwise specifically provided *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal.App.4th 1040, 1051 (Cal. App. 2009) (a lis pendens cannot be based on an arbitration it is not an "action" under C.C.P. §22); *Cf. City of Oakland v. Public Employees' Retirement System*, 95 Cal.App.4th 29, 48 (Cal. App. 2002) ("action" refers only to "proceedings in courts, and not hearings before boards."). Notably, there are no cases, published or unpublished, on Westlaw in California, the Ninth Circuit, or any district courts thereunder where an award of dismissal based on C.C.P. §340(c) has been confirmed or vacated.

This is not "merely" an alleged incorrect interpretation of a complex matter of contract law like in *Kyocera Corp*, 341 F.3d at 1003. In fact, incorrectly interpreting the law would be along the lines of misconstruing what a public purpose is for an anti-SLAPP statute, not being the first arbitrator to ever dismiss claims under C.C.P. §340(c), a statute that by its express wording applies only in a

"court of justice." The arbitrator did not misinterpret the law, he applied the wrong law altogether. To provide the only proper analogy, it would be like if the parties agreed for two-and-a-half years that Washington law applied, but then the arbitrator decided to apply some other state's law anyways.

**B. The arbitrator applying California law, despite Tesla's agreement for the first 865 days of the case to Washington law, amounted to, and is a collective factor towards, "manifest disregard for the law."**

Parties in arbitration can specify and agree on choice-of-law. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58-59 (1995). Parties in arbitration can also, as noted *supra*, specify time-bars in arbitration through contract or agreement. *See e.g., Chiron Corp.*, 207 F.3d at 1132. Generally, arbitrators must decide matters consistent with and within the scope of the parties' contractual agreement." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995); *ASARCO LLC v. United Steel Workers Int'l Union*, 910 F.3d 485, 490 (9th Cir. 2018) (an arbitrator's decision must "draw its essence from the agreement"). Finally, Washington's statute of limitations does apply in arbitration, and so if the parties agreed to Washington law, then the arbitrator needed to apply that statute. RCW 7.04.090(3) ("A claim sought to be arbitrated is subject to the same limitations of time… as if the claim had been asserted in a court.").

On June 27, 2019, a federal district court noted in a ruling that "[t]he Parties appear to agree that Washington law applies in this case, both relying exclusively on Federal and Washington law in their briefs." *Balan v. Tesla Motors, Inc.*, No. C19-67 MJP, 2019 WL 2635903 (W.D. Wash. June 27, 2019). Tesla filed no

papers contesting the finding that Washington law applied or that they agreed to it. Rather, 3.5 months later, on October 14, 2019, when asked by the arbitrator what state law controlled, Counsel for Tesla replied, "Washington law, and frankly it [sic] matters [sic] for this case, because defamation law doesn't differ that much but is [sic] Washington state law." ER-33, *See* n. 8.[17] This recitation is all but confirmed by the first arbitration conference order which states [i]nitially, the parties agree that the substantive law of Washington shall apply…". ER-118.

Only after 865 days elapsed, the thought occurred to Tesla to argue that California law should apply instead – after five months at the district court, nine months of arbitration, 15 months of appeal, and several months after that. ER-57–58. Considering that the arbitrator did not finally order that California law applied until August 29, 2021, that means for the 956 days after Balan filed her claims, and in three different forums (district court, this circuit and arbitration), Washington law controlled, and her claims were not time-barred. However, when the clock struck midnight on day 957 her claims magically turned into a pumpkin. Then, after declaring California law controlled, despite Tesla and Balan's agreement to the contrary, the arbitrator applied the portion of that state's law that expressly does not apply in arbitration. Viewed in the aggregate, it is clear "the arbitrator

---

[17] *See* ER-33: The arbitrator agreed saying, "[t]hat was my sense as well." He then notes that the issue of what arbitration act applies –FAA, CAA or a Washington corollary – is "something that we might have to consider over time as well." Thus, in that conference, the arbitrator qualified the issue of what arbitration act applied, but did not equivocate (nor did any party) that Washington substantive law applied.

dispensed his own brand of [] justice" rather than drawing from the essence of the parties' agreements. *ASARCO LLC,* 910 F.3d at 490.

**C. The arbitrator's ruling that raising a limitations defense 882 days into a case was not a waiver, despite clear expectations prejudice, amounts to, and is a collective factor towards, "manifest disregard for the law."**

In the context of laches, or waiver by inaction, courts recognize two forms of prejudice, "evidentiary prejudice" and "expectations-based prejudice." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir.2001). Evidentiary prejudice refers to degrading evidence, faded memories, and unavailable witnesses whereas the expectations-based prejudice derives from a [party] taking actions or suffering consequences that it would not have" absent the other party's delay in asserting rights, privilege, or claims. *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1117 (N.D. Cal. 2008). For example, a party would suffer expectations-based prejudice if they invested labor and capital into building up a trademark only for another party to swoop in and claim the right. *Id.*

Here, Tesla first asserted their statute of limitations defense 882 days into the proceeding, and Balan's claims were dismissed as a result thereof over 1,000 days into the case. ER-56–58. In that time, several hundred filings consisting of thousands of pages of motions, briefings and other filings were traded between the parties in three different forums – the district court, this circuit, and arbitration. *Id.* Tesla could have asserted this defense on day one, as to all claims, or concurrently with their motion to compel. Similarly, Tesla could have included it in their 17 affirmative defenses, but they did not. ER-114. In that time, Balan suffered

considerable expense in the form of labor hours, effectively enduring a full six semesters of law school sans the degree. If only Tesla had asserted their right at the start, assuming *arguendo* the defense is even meritorious, Balan could have spent that time working rather than being embroiled in serial litigation.

The case law is unclear on whether labor and time lost in litigation is or is not excluded from this circuit's concept of expectations-based prejudice, but the arbitrator thought it applied based on his order staying arbitration during appeal:

> Because there is a meritorious argument and a realistic possibility that the entire defamation claim will be the subject of this arbitration, **the prejudice to Respondent of the potential for a duplication of arbitrations** if the existing arbitration were to proceed outweighs any prejudice to Claimant caused by a delay of this arbitration.

ER-110. (emphasis added). The prejudice to Balan, here, is the same prejudice the arbitrator shielded Tesla from in ordering a stay: wasted filings, labor and time.

However, Appellees rhetorical refrain, focusing myopically on evidentiary prejudice, is that Balan "was not prejudiced by any purported delay in Petitioners' assertion of the statute of limitations defense [because] [h]er claims were time-barred **on the day she filed them**." ER-16. Not only was Balan prejudiced by Tesla's undue delay in asserting this defense (even they note that they could have asserted it on day two rather than day 882) for the reasons noted *supra*, but also by the defense itself being asserted – C.C.P. §340(c) is not a defense in arbitration.

Looking at the factors collectively, and not in isolation, we started with a game of poker (Washington law), the dealer changed it mid-hand to Blackjack (California law), and when Balan should have won anyways, he declared that she

lost the game of cribbage (deciding the matter on a non-arbitration defense). This happened, in part, because 865 days into this hand of cards, Tesla asserted that it was really playing Blackjack all along and then weeks later lodged their request for the dealer to decide based on the rules of cribbage. When Balan asked the dealer to apply the rules of poker everyone agreed on at the start of the hand, the dealer told her that the rules had been subject to reconsideration. Finally, when Balan argued that waiting 865+ days into this hand of cards is a bit late in the game for Tesla to ask to change the rules, the answer was that she did not lose enough on the hand (prejudice).The result is completely irrational and offends due process.

## CONCLUSION

This Court should reverse the district court order for lack of subject matter jurisdiction under existing precedent in *Theis Rsch., Inc.*, under *Badgerow*, and/or for failing to satisfy their burden as to amount in controversy. The proper forum for Appellees' petition would have been, and may still be, in the state court.

Alternatively, if the panel finds that the district court had subject matter jurisdiction then this panel should, based on the arbitration defects set forth herein and pursuant to 9 U.S.C. §10(a)(1)-(4), reverse the district court order and vacate the arbitration award. Further, pursuant to 9 U.S.C. §10(b), this panel should order an immediate rehearing of Balan's claims in arbitration, or remand the case with instructions for the district court to so order.

This case warrants special consideration because, as detailed herein, the district courts do not uniformly apply this circuit's existing arbitration amount-in-controversy precedent from *Theis Rsch., Inc.* Further, if this panel does not vacate

the district court order under its pre-*Badgerow* precedent, the issue of whether courts are now prohibited from looking-through to the demand to find amount-in-controversy post-*Badgerow* would be a question of first impression in this circuit. Notably, no other federal circuit has examined *Badgerow*'s applicability to amount-in-controversy for 9 U.S.C. §§ 9-10 petitions. Thus, this appeal may have significant implications on many other circuit cases and nationwide.

Date: 04/01/2024

/s/ William Moran II
William Moran II, Esq.

/s/ Arthur Hawgood III
Arthur Hawgood III, Esq.

*Attorney for Appellant Cristina Balan*

## STATEMENT OF RELATED CASES

Appellant is not aware of any related cases pending in the Ninth Circuit.

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number:** 22-16623

I am the attorney for Appellant Cristina Balan.

This brief contains 9009 words, excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1.

**Signature:** *_/s/William Moran II_*          Date: April 1, 2024
                 William Moran II

# CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED: April 1, 2024

ARTHUR WILLIAM, LLP

By    */s/ William Moran II*
William Moran II, Esq.
*Attorney for Appellant*
Cristina Balan